Michael R. Gordon (MG 7838)
Rebecca L. Misner (RM 8086)
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212-536-4821
Facsimile: 212-536-3901
Email: michael.gordon@klgates.com
       rebecca.misner@klgates.com

Joseph L Luciana, III, admitted *pro hac vice*
Megan E. Smith Miller, admitted *pro hac vice*
K&L Gates LLP
535 Smithfield Street
Pittsburgh, PA 15222
Telephone: 412-355-6500
Facsimile: 412-355-6501
Email: joseph.luciana@klgates.com
       megan.smithmiller@klgates.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CALGON CARBON CORPORATION,                |    Index No.: 08 CIV 4407

                        Plaintiff,        |

                v.                        |    **AFFIDAVIT OF MEGAN E. SMITH
                                          |    MILLER IN SUPPORT OF MOTION TO
WDF, INC., and                            |    DISMISS**
SEABOARD SURETY COMPANY,                  |

                        Defendants.       |

                                          |
-------------------------------------------------------x

MEGAN E. SMITH MILLER hereby declares:

1.      I am an associate with the law firm of K&L GATES LLP, attorneys for Plaintiff

Calgon Carbon Corporation ("Calgon"). I am admitted *pro hac vice* to appear before this Court.

2.      I respectfully submit this affidavit, upon personal knowledge and a review of the case file, in support of Calgon's Motion to Dismiss WDF, Inc.'s Counterclaims with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6).

3.      The purpose of this affidavit is to put before the Court certain documents relevant to Calgon's Motion to Dismiss and which may be considered by the Court

4.      Attached here to as Exhibit 1 is a true and correct copy of Calgon's Complaint filed May 9, 2008.

5.      Attached hereto as Exhibit 2 is a true and correct copy of the Defendants' Answer, including WDF's two-count counterclaim, filed on July 11, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31th day of July, 2008 in Pittsburgh, Pennsylvania.

Megan E. Smith Miller

Sworn to me before this
31st day of July 2008

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia Popek, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Dec. 29, 2011
Member, Pennsylvania Association of Notaries

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern     District of     New York

CALGON CARBON CORPORATION,

                Plaintiff          **SUMMONS IN A CIVIL ACTION**

      V.

WDF, INC., and SEABOARD SURETY COMPANY,

             Defendants.     CASE NUMBER: 08 CIV 4407

TO: (Name and address of Defendant)

WDF, INC.            Seaboard Surety Company     Seaboard Surety Company
30 North MacQuesten Pkwy.   One Tower Square        90 William Street
Mt. Vernon, NY 10550      Hartford, CT. 06183        New York, New York   10038

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Rebecca Misner, Esq.
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York   10022-6030
(212) 536-3900

an answer to the complaint which is served on you with this summons, within    20    days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**           MAY 0 9 2008

CLERK                                   DATE

(BY) DEPUTY CLERK

'08 CIV 4407

Michael R. Gordon (MG 7838)
Rebecca L. Misner (RM 8086)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  212-536-4821
Facsimile:  212-536-3901
Email:  michael.gordon@klgates.com
          rebecca.misner@klgates.com



*Attorneys for Plaintiff Calgon Carbon Corporation*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CALGON CARBON CORPORATION

                Plaintiff,

        v.

WDF, INC., and
SEABOARD SURETY COMPANY

              Defendants.

-------------------------------------------------------------X

Index Number: _____

Judge: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, Calgon Carbon Corporation, by and through its attorneys, Kirkpatrick &

Lockhart Preston Gates Ellis LLP, for their Complaint against Defendants, WDF, Inc. and

Seaboard Surety Company, allege as follows:

### PARTIES

      1.      Plaintiff, Calgon Carbon Corporation ("Calgon"), is Delaware corporation with a

principal place of business located at 500 Calgon Carbon Drive, Pittsburgh, PA 15205.

      2.      Defendant WDF, Inc., formerly known as Wachtel, Duklauer & Fein, Inc.,

("WDF") is, upon information and belief, a New York corporation with a principal place of

business located at 30 North MacQuesten Parkway, Mt. Vernon, NY 10550.

3.      Defendant Seaboard Surety Company ("Seaboard") is, upon information and belief, a New York corporation with business locations at 90 William Street, New York, NY 10038 and One Tower Square, Hartford, CT 06183.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the Defendants are diverse from Calgon and the amount in controversy exceeds $75,000.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) because the Defendants reside within the Southern District of New York and a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of New York.

## FACTUAL BACKGROUND

6.      By letter dated April 11, 1990, the City of New York Department of Environmental Protection ("NYDEP") awarded Contract #51-G (the "Prime Contract") in the amount of $47.8 million to WDF to install processing equipment at various locations throughout New York City (the "Project").

7.      WDF subcontracted with Connor Management Group ("Connor") to provide processing equipment for the Prime Contract. Connor then subcontracted with Calgon by purchase order dated May 3, 1990 ("Contract"), a true and correct copy of which is attached as Exhibit A. Upon information and belief, WDF assumed the rights and obligations of Connor under the Contract with Calgon.

8.      Calgon in turn subcontracted with Hartzell Fans, Inc. ("Hartzell") for the supply of 12 scrubber exhaust fans (the "Fans"), which Hartzell supplied. However, NYDEP claimed that the Fans were not functioning properly. As a result, upon information and belief, NYDEP withheld from WDF the amount of $552,480 due to Calgon (the "Withheld Amount").

9.     Calgon resolved NYDEP's concerns with the Fans and, upon information and belief, the Fans are currently functioning property. As a result, upon information and belief, during the summer or fall of 2007, the NYDEP made payment of the Withheld Amount to WDF.

10.     Shortly after learning of NYDEP's payment to WDF, Calgon demanded payment of the Withheld Amount. Despite its clear obligation to do so under the Contract, WDF has failed and refused to pay Calgon the Withheld Amount.

## COUNT I
## BREACH OF CONTRACT

11.     Paragraphs 1-10 are incorporated as if fully restated herein.

12.     As described above, WDF and Calgon are the parties-in-interest under the Contract.

13.     Under the Contract and applicable New York law, WDF was obligated to pay Calgon the Withheld Amount within 30 days of receipt of payment of that amount from the NYDEP.

14.     Upon information and belief, the NYDEP made payment to WDF of the Withheld Amount in July or August 2007.

15.     WDF has breached the Contract with Calgon by failing and refusing to pay Calgon the Withheld Amount within 30 days of receipt of payment from the NYDEP.

16.     WDF is therefore liable to Calgon for the Withheld Amount.

17.     Additionally, under the Contract and applicable New York law, WDF is liable to Calgon for attorneys' fees, interest, costs and expenses.

## COUNT II
## SURETY CLAIM UNDER PERFORMANCE AND/OR PAYMENT BONDS AGAINST SEABOARD SURETY COMPANY

18.    Paragraphs 1-17 are incorporated as if fully restated herein.

19.    Upon information and belief, Seaboard issued to WDF performance and/or payment bonds (the "Bonds"), thereby guaranteeing WDF's performance and payment obligations related to the Project. Upon information and belief, the Bonds were issued under Policy No. 20089690 and for the penal sum of $47,800,000.

20.    Calgon requested copies of the Bonds from Seaboard and/or WDF. Seaboard and/or WDF failed and/or refused to provide Calgon with copies of the Bonds.

21.    Seaboard is liable under the Bonds to Calgon for all amounts WDF owes Calgon under the Contract, including, without limitation, the Withheld Amount, attorneys' fees, interest, costs, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Calgon respectfully requests this Court to:

1.    On the First Cause of Action, enter judgment in Calgon's favor awarding Calgon monetary damages plus pre-judgment interest, post-judgment interest, attorney fees, costs and expenses, and such other relief as is just and proper;

2.    On the Second Cause of Action, after trial, enter judgment in Calgon's favor and against Seaboard, based upon Seaboard's obligations under the Bonds, and awarding monetary damages to Calgon in an amount to be determined at trial plus prejudgment interest, post-judgment interest, attorneys' fees, costs, expenses, and such other relief as is just and proper.

## JURY TRIAL DEMANDED

Plaintiff Calgon hereby demands a jury trial in this action.

Dated: New York, New York
     May 9, 2008

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP

Rebecca L. Misner (RM 8086)
Michael R. Gordon (MG 7838)
599 Lexington Avenue
New York, New York 10022
Telephone: 212-536-3900
Facsimile: 212-536-3901
Email:  douglas.broder@klgates.com
Email:  rebecca.misner@klgates.com

*Attorneys for Plaintiff Calgon Carbon
Corporation*

*Of Counsel:*
Joseph L. Luciana
Megan E. Smith Miller
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, Pennsylvania 15222

# **<u>EXHIBIT A</u>**

# CONNOR MANAGEMENT GROUP INC.

43-77 162 St.
FLUSHING, N.Y. 11358
(718) 762-4301

## CONNOR / CALGON

# PURCHASE ORDER

NO. ★ ~~70932~~ 70932

This order number must appear on all correspondence, invoices, packages and shipping documents

| DATE | 5 | 3 | 90 |

| TO | CALGON CARBON CORP./VENDOR<br>c/o Envirosales Inc.<br>P.O. Box 79-Gedney Station<br>White Plains, NY 10605<br><br>ATTN: | SHIP TO<br>(SEE BELOW)<br>☐ PROJECT<br>☐ OFFICE<br>☐ JOB SITE | PROJECT: 51G WP-284 CITYWIDE<br>DEWATERING FACILITIES<br><br>ACTIVITY: FURNISH ODOR CONTROL<br>SYSTEMS |

| PHONE (914) 662-4800 | ☒ F.O.B. JOB SITE<br>☒ FREIGHT PREPAID | TERMS | DELIVERY REQUIRED |
|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | Contract 51G - To Furnish and Install Process Equipment City Wide | | |
| | 1. Furnish and deliver all such materials and equipment as set forth in contract sections D1.110 & D1.111 entitled Odor Control Systems - Wet Packed Towers and Odor Control Systems Activated Carbon Absorbers, respectively. | | |
| | 2. Refer to supplemental terms and conditions of purchase order for additional requirements. | | |
| | NOTES: | | |
| | A 48-hour notice must be given to Vendee prior to delivery of any equipment to the delivery points. | | |
| | Ship via open truck. | | |
| | Delivery points to be determined at a later date - will be within the New York tri-state area. | | |
| | | | |
| | ENVIROSALES, INC.<br>RECEIVED<br>OCT 26 1990 | | |
| | | | $6,100,000. |

☐ Sign and return "Acceptance Copy"

☐ Forward Certificates of Liability Insurance and
Workers Compensation Insurance to this office

☎ Submittals Required: _____ copies.

☐ Ship C.O.D. Advise of C.O.D. charge before shipping

☐ Retainage _____ / _____ %

Roger H. ~~Zentsch~~  Sr. V.P.
ACCEPTED BY: _____ DATE: 11/05/90

FOR SUPPLIER/SUBCONTRACTOR

See Reverse Side for Terms and Conditions

VENDOR

CONNOR MANAGEMENT GROUP INC

**In accordance with construction Contract 51G between the Vendor and the City of New York Dept. of Environmental Protection to furnish and install process equipment City Wide; WP-284 Land Based Sludge Management Plan City Wide Phase I Dewatering Facilities.**

I. All Orders are subject to approval by the Engineer, Owner and all agencies having jurisdiction in this matter. Approval does not relieve the Seller of the responsibility of meeting the Construction Contract specifications unless deviations from same are clearly identified as such on submission materials.

II. The Seller agrees that he is bound by all of the provisions and conditions of the Contruction Contract between Buyer and Owner insofar as his work is concerned to the same extent and to all intents and purposes as though the Seller were the Buyer save only as modified by this agreement.

III. The Seller shall make no claim for extra or additional work unless the same shall be done in pursuance of a written change order. The value of any extra or omitted work shall be determined by the Owner and his decision shall be final as between the parties hereto.

IV. Should the said work not be completed within the time allowed or should the Seller at any time refuse or neglect to perform to the satisfaction of Buyer, or become insolvent, the Buyer may, upon three days notice declare the Seller in default, terminate this Purchase Order and have all remaining work completed by others and said Seller shall be liable for any and all damages sustained by othe Buyer thereby and the Seller shall be entitled to no further compensation whatsoever in the event this Purchase Order is terminated The Buyer shall have the right, in the event of termination of the Construction Contract for any cause, at any time, to cancel this Purchase Order and require the Seller to cease work thereon in which case the Buyer shall indemnify the Seller based on the Purchase Order amount against any damage directly resulting from the cancellation except that the Seller shall not be entitled to compensation for prospective profits or material unfinished.

V. ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXX.~~

VI. Notwithstanding anything to the contrary contained herein, the Seller agrees to make no claim for damages for delay in the performance of this Purchase Order occasioned by any act or omission to act of Buyer, the Owner, other contractors, subcontractors, materialmen, or suppliers or any of their agents or representatives.

VII. Actual receipt of payment by Buyer from the Owner for the Seller's work is an express condition precedent to payment by Buyer to Seller. Retainage will be withheld in accordance with terms of the Contruction Contract.

VIII. Delivery to Buyer of a duly executed general release and waiver of lien of all claims relating to this project shall be an express condition precedent to receipt of final payment by Seller. In addition thereto, acceptance of the final payment shall constitute a release by Seller of any and all claims arising from or in breach of this Purchase Order.

IX. Prices are to be considered firm for the duration of this project.

X. All quantities are based on the best available information at the time of this order. Any additions or deletions to these quantities will be made at the unit prices.

XI. Time is of the essence of this Purchase Order.
  A. Seller shall commence work when directed by Buyer and shall make deliveries promptly at such times as Buyer shall direct. Seller shall familiarize itself, and shall strictly comply, with Buyer's progress schedule and with the time limits provided for in the Construction Contract, and Seller shall, at all times, proceed with its performance so as not to delay or hinder the work of Buyer or any other contractor or Suppliers.
  B. If, in Buyer's sole opinion, Seller is not progressing its work in a prompt and diligent fashion, upon two days' notice from Buyer, Seller shall, at its own cost and expense, work additional shifts, work overtime, or take such additional steps as Buyer shall direct in order to insure timely performance by Seller.
  C. Seller shall indemnify and hold Buyer harmless against any loss, expense or damage, including liquidated damages, which may be incurred by Buyer, in whole or in part because of any delay by Seller in the prosecution or completion of its performance hereunder.
  All material and equipment shall be subject to inspection and testing by Buyer and the Owner at the manufacturer's or fabricator's plant as well as at the place of delivery. No inspection or acceptance of, or payment for, any material or equipment shall relieve or release Seller from any of its obligations or liabilities hereunder.

XII. Seller shall have only such rights against Buyer as Buyer shall have against the Owner, and such rights shall be enforced in the same manner and shall be subject to the same conditions. In no event shall Buyer be required to pay Seller more for any claim by Seller for extras or damages of any sort then Buyer shall actually receive from the Owner for such claim.

XIII. If this order includes any installation or other work at the job site, Seller shall:
  A. Secure Insurance coverages which are satisfactory to Buyer and in accordance with the Construction Contract;
  B. Assume full liability for all federal, state and local taxes, insurances and benefits payable in connection with all work performed.

XIV. ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXX Purchase Order XXXXXXXX.~~

XV. Seller shall provide all testing and personnel training in accordance with the Construction Contract.

XVI. Start of warranty period and duration of same are determined by the Construction Contract.

XVII. Seller shall furnish Installation, Operation, Maintenance, and Parts manuals in accordance with the Construction Contract.

XVIII. Unless specifically stated to the contrary on the face of this Purchase Order, all prices are F.O.B. destination and shall be for delivery to the premises designated free of all freight, transportation, unloading, or other charges of any sort, and shall include all sales, use, excise, or other similar taxes, whether or not in effect on the date thereof.

XIX. Seller agrees that all labor is to be in accord with OSHA regulation.

XX. Seller agrees not to discriminate in hiring, nor to maintain segregated facilities.

XXI. The price quoted above includes all costs including but not limited to freight charges, services, start-up, testing, etc., including all parts necessary to insure a complete and fully working system.

XXII. Seller hereby waives and releases and shall have no right to claim damages from Purchaser due to any delay caused by Purchaser, General Contractor, or Owner or any other party having a contract with 'Purchaser. In the event of such delay Seller must notify Purchase within 5 days thereof and submit a written request for an extension of time to perform hereunder with all pertinent facts supporting such request.

SUPPLEMENTAL TERMS AND CONDITIONS
TO PURCHASE ORDER #S-70932

ODOR CONTROL SYSTEMS

Furnish the following without limitations:

1.  All samples, shop drawings, detail drawings, erection drawings, tests, guarantees, approvals, clearances, certificates of compliance, mill tests and other test reports, bond affidavits, etc., including correlation with other trades, as required by the Principal Contract for the work hereunder; and,

2.  a) Pilot testing work shall commence immediatley and shall be ready for testing on or before June 11, 1990.
    b) Shop drawings shall commence immediately and shall be delivered to Vendee on or before June 22, 1990.

3.  The VENDOR/MANUFACTURER will furnish seven (7) sets of submittal data for each Jobsite in addition to the specified number of sets (working drawings, catalog cuts, maintenance manuals, etc.).  Specified number of sets shall include the amount required to be submitted to the engineer and to each prime contractor. Submittal data shall indicate the proposed location of all of its work thereon and VENDOR/MANUFACTURER shall coordinate this work with the mechanical, electrical, architectural and structural work and will adjust any discrepancies with the VENDEE.  Resubmittals, if necessary, shall be made within two (2) weeks after return of initial submission.  No portion of the work hereunder will be installed until all interferences, pertaining to the mechanical, electrical, architectural and structural work have been resolved.  In that regard, the VENDEE's determination regarding any discrepancy or interference will be final and conclusive.  VENDOR shall not fabricate or ship any material or equipment until VENDEE;s written notice to proceed is received by VENDOR. Time of delivery is the essence of this purchase order.  VENDEE reserves the right to cancel without cancellation charges to the VENDEE, all or any part of this purchase order if not filled within the specified time of delivery, unless the VENDOR is prevented from meeting the delivery time specified in this purchase order by acts of God, strikes, fire or other casualty or other causes beyond the control the the VENDOR, provided the VENDOR within ten (10) day of such events notifies the VENDEE in writing of the occurrence of such events; and,

5.  The VENDOR/MANUFACTURER shall be responsible for all work hereunder and approval of shop drawings, etc., by the OWNER shall not relieve the VENDOR/MANUFACTURER from correcting work either reflected in error on its shop drawings or not in conformance with either field or the requirements of the documents referred to herein; and,

6.  The VENDOR/MANUFACTURER shall preassemble, prewire and prefinish all materials and equipment hereunder in the factory, whenever possible, ready for immediate installation in the field.

Equipment will be in the largest sections as possible (Roadable). VENDOR/MANUFACTURER shall submit drawings, for VENDEES approval, showing size of each piece shipped (including type of skid and dimensions with skids), weights and methods of reassembly. Vendor shall not disassemble any equipment until drawing approval is received. The VENDOR/MANUFACTURER shall assure proper fit and coordinate his work with the work of other trades in accordance with normal practices of the industry. Equipment will be individually (properly assorted for each jobsite) skidded packed, packaged etc. per jobsite to allow for ease in jobsite distribution.

Vendor shall, if requested by Vendee, furnish reports to Vendee detailing its progress in acquiring and fabricating the material which is the /subject of this contract. If Vendor fails to furnish such report promptly, or such report indicates that it is likely that the Vendor shall not be able to make timely delivery, then Vendee may treat such condition as a breach of this agreement by Vendor; and,

7. Furnish all anchor bolts (including drawings showing locations with respect to equipment, size, embedment dimensions, etc.) washers, plates, templates, etc., to be built into or embedded in concrete/masonry, furnish all gaskets and washers, nuts, bolts for manholes and closures required for field installation, anchor bolts to be delivered a minimum of 30 days prior to concrete pour; and,

8. The VENDOR/MANUFACTURER represents that it has the materials, labor and equipment and facilities necessary to satisfy the VENDEE's progress requirements. The assignment of this purchase order by the SELLER or any interest therein, or any moneys due or to become due by reason of its terms, without the written consent of the Vendee, shall be void. All materials hereunder will be delivered in exact accordance with the progress schedule requirements of the VENDEE and as may be further qualified hereinafter. The progress schedule submitted by the VENDEE to the OWNER shall not be considered controlling of the progress requirements of this Project; it being understood by the parties hereto that the VENDEE will attempt to complete all phases of the Principal Contract in advance of the Contract Completion Date, barring circumstances beyond the VENDEE's control; and

9. All materials and equipment furnished under this purchase order is guaranteed by the VENDOR against defects and VENDOR agrees to replace without charge to VENDEE's said defective material and equipment, or remedy any difficulties latent or patent not due to ordinary wear and tear or due to improper maintenance thereof, which may develop within one year from the date of acceptance of the Owner, or within the guarantee period set forth in the applicable plan and specifications, whichever is longer.

Furnish all guarantees, tests, spare parts, spare part lists, equipment manuals, and instructions, tools, price lists, etc., for the materials and equipment furnished hereunder, as required by the Principal Contract; and

10. Performance Bond and Payment Bond in the amount of 100% of the purchase price will be supplied by the VENDOR/MANUFACTURER at the cost to the VENDEE. Said bond shall name Connor Management Group, Inc., as obligee and is subject to the approval of the VENDEE's bonding company and/or agent; and surety must be licensed to do business in the State of New York; and, bond will be paid by Connor Management upon receipt of paid monies from Calgon.

11. For the purpose of assisting the VENDOR/MANUFACTURER, the following is a partial general listing of the categories or work included hereunder. Under no circumstances is this listing to be considered all inclusive; it being the intent that the VENDOR/MANUFACTURER perform all obligations of the VENDEE for this material and equipment, as required by the drawings, specifications, and addenda of the Principal Contract.

Furnish, deliver, witness shop test, test and calibrate controls, provide manufacturers service for installation, start-up, testing and training of operations personnel, provide one (1) year supervisory maintenance assistance program and guarantee the odor control systems (wet packed towers and activated carbon absorbers).

The equipment shall be for all locations as shown in the contract documents (ie Wards Island, Hunts Point, 26th Ward, Bowery Bay, Jamaica, Oakwood Beach and Tallmans Island).

Provide the following: Scrubber towers, pumps, fans, motors with thermal protection, ductwork, flow control devices, instrumentation, exhaust stacks with reinforcing transition pieces, manholes, nozzles, header assemblies, pilot tests, packing media, scrubbing liquids, carbon, sample ports, vibration isolators, vibration tests, safety guards, flanges, gaskets, anchor bolts, bolts and nuts for manhole closures, washers, fiberglass vessel, tie-down lugs, lifting lugs or eyebolts, templets, mist eliminators, access doors, spray headers, overflow and drain connections and assemblies, scrubber gratings, distribution headers, stiffeners, grease fittings, equipment bases & sub-bases (excluding concrete pads), painting, grounding rods with required grounding submittals, static electric test equipment with testing procedures, belts, pulleys, flexible connections, shafts, bearings, couplings, valves, ball valves, controls including all control panels, variable speed controllers with drives & MCC's (ie: SCR/DC, OCS/CP), internal wiring, buses, alarms, indicating lights, terminal strips, circuit breakers, transformers, auxiliary contracts, relays, surge suppressors, manual resets, rubbers, mats, potentiometers, dampers with operators, valve operators, microprocessors, pressure controllers, transmitters, linkage, stops, limit switches, auxiliary switches, interlocks, selector switches, push buttons, analyzer systems, analyzer/controllers (pH measuring system, ORP measuring system) with preamplifiers, microprocessors, automatic temperature compensators, sensors, etc., probes with valves, and vessel isolation blind flanges, with valved pressure measurement connections.

Also provide the following:

a) Performance guarantee
b) Special tools and spare parts including lists, for each site.
c) Video taping
d) Delivery of cutouts from nozzles, manholes, etc., to engineer for testing.
e) Shop drawing submittals (pilot testing shall not interfere or delay the submission of shop drawings.)
f) Operation and maintenance manuals
g) Recommended installation procedures and storage instructions.
h) All equipment, testing appartus and chemicals required for testing.



i) Certified shop and field test reports.
j) Warrantee that equipment can meet a performance test six (6) months after initial field acceptance test completion.
k) All modifications to systems required for satisfactory operation based on the results of field tests at no additional cost to the Vendee.
l) Recommend testing procedures.
m) List of recommended lubricants with quantitates required for a 1-year supply.
n) Guarantees commencing from the date of final acceptance and during the maintenance period.
o) Furnish and design the carbon support system.
p) Special packing (packaging for shipment) and shipping as specified.
q) Any additional cost related to horsepower increases over and above that specified (ie: starters, wiring, etc.), connections size modifications and bolt circle modifications, shall be the vendors responsibility.
r) Vendor shall guarantee his product free from errosion, corrosion, etc., when exposed to all chemicals within the systems, for the guarantee periods specified.
s) All electrical interconnecting schematics as required to complete interface with other systems, including wiring diagrams, panel details, control schematics.
t) Periodic examination of bed settlement.
u) Coordinate hypochlorite metering pump numbers with Vendee prior to final assignment of same.
v) Additional sheaves, if required for final balancing.
w) Furnish all ductwork shown to be by Contract 51G.
x) Description of activated/carbon loading procedures.
y) The Vendor shall be responsible for all costs involved with independent laboratory carbon testing, if required.
z) Any additional supervision time or instruction time required over and above that specified to achieve successful installation and operation shall be provided at no additional cost to the Vendee.
aa) Furnish the impregnated carbon required.
bb) One (1) year extended maintenance period.
cc) Carbon shall be stored at Vendors warehouse until required, if requested by Vendee, at no additional cost.

12. All material and equipment furnished under this purchase order shall be subject to Vendee's inspection and testing to determine compliance with the requirements of this purchase order. Deliveries to the delivery points will be unopened and uninspected until a representative of the Vendor/Manufacturer and the Vendee meet for a joint count and/or inspection, at the Vendee's option; the signing of delivery receipts by the Vendee shall not be acknowledgement that the quantities or quality of the delivery is acceptable.

All shipments under this purchase order must be delivered as provided herein between the hours of 8:00 AM and 12:00 Noon on weekdays, but not on holidays observed by the Vendee's employees at the delivery point. No claim for redelivery charges will be made by the Vendor or allowed to the Vendor for shipments delivered contrary to the preceding sentence.

At the time of delivery of the carrier at point of origin, written notice of shipment is to be furnished to the Vendee, and Vendor shall be responsible for all traffic control to the delivery point.

All shipments must be packed, crated, bundled, etc., in accordance with the special conditions shown herein. No extra charge will be allowed for packing, crating, bundling, delivery to more than one delivery point (central warehouse or various jobsites), etc.

All frames, steel supports, rails and mounting devices, etc., shall be prepunched in the factory ready to receive equipment. Any costs due to correcting misalignment shall be backcharged against the Vendor.

All equipment received must be properly skidded, palletized for protection and ease in transfer and handling purposes and protected from the element. All costs for reskidding due to immproper delivery skidding will be backcharged to Vendor.

Vendor shall clearly mark all materials delivered with the words, "Property of the City of New York" (this marking shall be applied directly and stenciled conspicuously to equipment itself).

Vendor shall provide color coded waterproof tags on each piece of equipment indicating the following:

CONTRACT 51G
NAME AND NUMBER OF EQUIPMENT (ie.: Sludge Feed Pump #5301)
SITE LOCATION INTENDED FOR (ie.: Wards Island)

Color codes for tag shall be as follows:
Wards Island     - Red
Hunts Point      - Blue
26th Ward        - Yellow
Bowery Bay       - Green
Jamaica          - Orange
Oakwood Beach    - White
Tallman Island   - Gray

Vendors equipment name plate shall include indication of the name and number of equipment (ie.: Sludge Feed Pump #5301).
Weights, measurements, and other identification shall be clearly marked on each box, crate, bundle, package, piece, etc., by the Vendor prior to shipment. No extra charge will be allowed for this marking unless agreed to and specified in this order.

Delivery without authority will be at Vendor's risk until required by the Vendee even though accepted in the field. Payment will be held in obeyance until shipment is required.

No layover time will be paid by Vendee. All shipments will be prepaid unless specifically noted to the contrary. Vendor hereby agrees to indemnity the Vendee for violation of this provision; and,

11/2/90

13. All delivery costs are included in this purchase order F.O.B. delivery point. No changes as to quantities, qualities, description, prices, extent of services shall be made, nor will any charge for extras be allowed unless same has been authorized in writing by the Vendee. No charge will be allowed for freight, express, cartage, demurrage or other transportation or storage unless agreed to and specified in this order.

The Vendee may at times issue written orders to the Vendor making changes in, adding to, or subtracting from work to be performed hereunder. The Vendor shall not deviate from, add to, delete from or make changes in the work required to be performed hereunder unless so directed by prior written order from the Vendee signed by an officer of the Vendees. The Vendee and Vendor shall negotiate and endeavor to agree in writing to any change in time of performance or in the amount to be paid or the credit to be allowed under this agreement. In the event the Vendee and Vendor are unable to agree, the Vendor nevertheless shall and hereby agrees to proceed with performance as ordered and the question of change in the amount to be paid or time of performance shall be submitted in form and manner and within such time as will enable the Vendee to make timely claim thereof from the Owner as prescribed for the presentation of such claim thereof from the Owner as prescribed for the presentation of such claim or disputes in the principal contract. If no additional time or compensation is requested by the Vendor in writing within 48 hours after receipt of a particular order from the Vendee making changes in or adding to work, or after a dispute as to work included within this purchase order, it shall be construed that there is no additional time or compensation requested or required and that the order will be fully complied with and/or work performed by the Vendor without any extension of time or additional compensation; and,

14. If the Vendor fails or is unable to proceed with all or any of his obligations hereunder makes an assignment for the benefit of his creditors, is insolvent, or declared in default, the Vendee at his option may procure the articles or services from other sources by purchase in the open market, or by negotiated contract, or otherwise. The Vendor shall be liable to the Vendee for any excess costs and damages occasioned by said default or the Vendee may elect to complete performance of the articles or services obligated of the Vendor hereunder, in which event the Vendor shall also be liable to the Vendee for any excess costs and damages occasioned by said default including reasonable attorney's fees.

It is agreed by the Vendor and the Vendee that in any controversy or claim arising out of or relating to this Agreement or any alleged breach thereof, actions shall be brought in the Courts of the State of New York and no other State, and the Vendor and the Vendee hereby irrevocably agree to submit to the jurisdiction of such Court. In the event an action is brought to enforce the provisions of this Purchase Order, the prevailing party shall be entitled to recover its costs of suit and reasonable attorneys' fees.

15. This Purchase Order shall take effect and be construed in accordance with the Laws of the State of New York, applicable to agreements to be entirely performed within that State, even if the goods or services ordered hereby may be shipped from or delivery is made in another State.

If any article or services furnished hereunder will be for the use of the United States Government or any state or local government or government agency under a contract with the Vendee, then the said article or service shall conform to the government contract drawings and specifications and all terms, provisions, and conditions of the principal contract between the government and the Vendee shall apply hereto as if set forth at length herein; and,

16. This Purchase Order is subject to Vendees award of contract from the Owner and in accordance with the Principal Contract, to the approval of the Owner, Vendor's ability to provide with the odor control at Cedar Creek or Vendor's ability to provide temporary odor control for Cedar Creek within the time frame established in Cedar Creek's CPM. In the event that the award of contract is not given to the Vendee or the Owner disapproves the Vendor for any cause whatsoever or Cedar Creek obligations are not carried out by the Vendor, this Purchase Order will immediately become null and void and neither party will have any claim as against the other; and,

17. Upon demand, the Vendor shall submit evidence satisfactory to the Vendee that no unpaid claims exist against him for taxes, labor, materials, services, supplies, or other obligations incurred by the Vendee in performance of work related to this Purchase Order. <u>When requesting payment the Vendor shall submit duly authenticated documents of title, such as bills of sale. The executed bills of sale shall transfer title to the materials from the vendor to the vendee free from all liens and claims; and,</u>

18. The terms and conditions of this Purchase Order in the form in which delivered in Vendee shall alone govern and control the relationship of the parties to this transaction, the provisions of any form of acceptance or confirmation of acceptance from Vendor to the contrary notwithstanding.

All prior options, conversations or preliminary negotiations between the Vendee and Vendor are merged in this Purchase Order and fully express their agreement; and,

19. DELIVERY SCHEDULE:  To meet with Vendees CPM schedule

20. The Vendor shall take out and maintain during the life of this contract insurance as specified in Schedule "A" of the General Conditions of the Principal Contract with the following exceptions:

(All Risk/Broad Form) for material after delivery to Vendees delivery point

The insurance company must be licensed to do business in the State of New York and must be approved by the Contractor. Two signed copies of a certificate of the issuance of such insurance policy bearing the endorsement "includes contractual liability to Vendee and the City of New York, as set forth in the subject contract," shall be delivered to the Contractor. Upon the execution and delivery of this contract, such certificate shall contain an agreement by the insurance company issuing the policy that the policy will not be cancelled without prior written notice to the Contractor, the time period specified by the Owner's policy on such matters. The Vendor shall deliver to the Contractor renewed insurance policies two (2) weeks prior to the expiration of original or previous policies; and,

21. The Vendor agrees that it will conform to all statutes, both State and Federal and any regulations thereunder, to provide equal employment opportunity for all individuals without regard to sex, race, creed, color or national origin and will not discriminate against any employee or applicant for such reasons, and will take affirmative action to insure that they are afforded equal employment opportunities without discrimination. Such action shall be taken with reference, but not limited, to recruitment, employment, job assignment, promotion, upgrading, demotion, transfer, layoff or termination, and selection for training or retraining, including apprenticeship and on-the-job training; and,

22. Invoices shall be rendered in quadruplicate for each and every shipment. Original and two copies of express or freight bill, with transportation charges shown thereon, and stamped by the carrier, shall accompany all invoices. This purchase order number must appear on all copies of the invoices. The articles or services must be described in terms used in this order, must itemize all components and be complete as to quantity, grade, type, size, weight, etc. All invoices shall be sent to Vendee.

The Purchase Price is firm and not subject to escalation or storage charges. Partial payments will be made within thirty (30) days after receipt of partial payment by the Vendee from the Owner for all approved equipment and materials, which are delivered to the site. Retainage on partial payments will be based upon the same percentage retained by the Owner from the Vendee, under the terms of the terms of the principal contract. Final payment is to be made within thirty (30) days after final payment is made by the owner.

I. EQUIPMENT REQUIRING WITNESS SHOP TESTS: (See note* below)

Upon completion of working drawings annotated "Furnished as submitted". (15%)
Upon completion of successful shop tests and submission of certified shop test results. (30%)
Upon completion of approved operation and maintenance manuals. (5%)
Upon delivery to site. (10%)
Upon installation or erection. (10%)
Upon completion of successful preliminary field tests. (15%)
Upon completion of successful final field tests. (15%)

or

II. EQUIPMENT NOT REQUIRING WITNESS SHOP TESTS: (See note* below)

Upon completion of working drawings annotated "Furnish as Submitted". (15%)
Upon completion of approved operation and maintenance manuals. (5%)
Upon submittal of certified shop drawings. (10%)
Upon delivery to site. (30%)
Upon installation or erection. (10%)
Upon completion of successful preliminary field tests. (20%)
Upon completion of successful final field tests. (10%)

*NOTE: As a prerequisite to obtaining payments in excess of fifty (50) percent, engineers approval as designated by "furnish as submitted" of Operation and Maintenance Manual for each item of equipment supplied for each site must be obtained.

A payment breakdown covering all elements of this Purchase Order must be mutually agreed upon and accompany all invoices for payment.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
CALGON CARBON CORPORATION,

                    Plaintiff,                Case No. 08 CIV 4407 (CM)

     -against-
                                              **ANSWER**

WDF, INC. and SEABOARD SURETY COMPANY,

                    Defendants

--------------------------------------X

     Defendants, WDF, INC. and SEABOARD SURETY COMPANY, by their attorneys, the Law Offices of William J. Turkish, PLLC, and for their Answer to the Plaintiff's Complaint, states as follows:

          1.    Denies knowledge or information sufficient to form a belief with respect to each and every allegation set forth in paragraph "1" of the Plaintiff's Complaint.

          2.    Denies each and every allegation set forth in paragraph "7" of the Plaintiff's Complaint, except admits that WDF subcontracted with Connor Management Group to provide certain equipment and services in connection with the prime contract.  On information and belief, denies that WDF assumed the rights and obligations of Connor under the May 3, 1990 Contract by and between Connor and Calgon.

          3.    Denies each and every allegation set forth in paragraph "8", except admits that Calgon entered into a subcontract with Hartzell Fans, Inc. ("Hartzell") for the supply of the 12 scrubber exhaust fans to be incorporated into the project pursuant to certain contract specifications.

          4.    Denies each and every allegation set forth in paragraph "9" of the Plaintiff's Complaint, except admits that the Plaintiff resolved the concerns of the City of New York Department of Environmental Protection ("NYDEP") more than 12 years after the determination by the Defendant and the

NYDEP that the Plaintiff and Hartzell installed fans that were not constructed with the materials required by the contract specifications which resulted in their failure to perform in accordance with the requirements of the specifications.

5.    Denies each and every allegation set forth in paragraph "10" of the Plaintiff's Complaint, except admits that Calgon has demanded payment by WDF of amounts related to the supply and installation of the fans.

6.    Denies knowledge or information sufficient to form a belief with respect to each and every allegation set forth in paragraph "12" of the Plaintiff's Complaint.

7.    Denies each and every allegation set forth in paragraph "13" of the Plaintiff's Complaint and respectfully refers this Court to the terms and conditions of the contract referred to therein and applicable New York law.

8.    Denies each and every allegation set forth in paragraphs "14", "15" and "16" of the Plaintiff's Complaint.

9.    Denies each and every allegation set forth in paragraph "17" of the Plaintiff's Complaint and respectfully refers this Court to the contract referred to therein for its terms and conditions and applicable New York law.

10.    Denies each and every allegation set forth in paragraph "19" of the Plaintiff's Complaint, except admits that the Defendant, Seaboard Surety Company, issued a Payment and Performance Bond No. 20089690 in connection with the subject project.

11.    Denies each and every allegation set forth in paragraphs "20" and "21" of the Plaintiff's Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

12.    Plaintiff fails to state a cause of action upon which relief can be granted as against the Defendant, WDF, Inc., as it does not have privity of contract.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

13.    Statutes of Limitations.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

14.    Plaintiff fails to state a cause of action as against the Defendant, Seaboard Surety Company, in that Plaintiff did not commence its action within the time limits set forth in the subject payment and Performance Bond.

## AS AND FOR A FIRST COUNTERCLAIM BY DEFENDANT, WDF, INC.

15.    That on or about April 11, 1990, WDF, Inc. (by its predecessor), was awarded Public Works Contract No. 51G by the Department of Environmental Protection of the City of New York to furnish and install certain processing equipment as required by the Contract's Plans and Specifications at several water pollution plants located in the City and State of New York (hereinafter the "Project").

16.    That on or about July 23, 1990, WDF, Inc. (by its predecessor), entered into a subcontract with Connor Management Group, Inc. (hereinafter "Connors") for a portion of WDF's contract work at the project.

17.    Thereafter, Connors entered into a Purchase Order with the Plaintiff, Calgon Carbon Corporation, pursuant to which the Plaintiff agreed to furnish certain material and equipment required in connection with the project (hereinafter the "Purchase Order").

18.    The Purchase Order provided, amongst other things, that the Plaintiff would furnish twelve (12) scrubber exhaust fans (hereinafter

the "Fans") at the project in accordance with the contract specifications.

19.    Amongst other things, the contract specifications required that the fan blades and shafts be constructed of a 100% fiberglass material and that the fans would purify and remove foul, noxious and contaminated air in such a manner as more specifically defined in the contract specifications and pursuant to certain agreed upon industry standards.

20.    Thereafter, Plaintiff entered into a Contract with Hartzell Fans, Inc. (hereinafter "Hartzell") for the supply of the previously identified fans.

21.    Thereafter, and on or before June 30, 1992, Plaintiff installed the fans provided by Hartzell into the project and the NYDEP issued a Certificate of Substantial Completion and awarded WDF a $705,000.00 bonus for timely completion of the project.

22.    Thereafter, upon information and belief, the NYDEP determined that the performance by WDF was complete and final.  However, prior to issuing the final payment to WDF of its performance bonus, the NYDEP notified WDF that there were problems with the fans in that they did not perform in accordance with the requirements of the contract specifications and did not meet the agreed upon and required performance standards.

23.    It was thereafter determined by the NYDEP that the fans were not constructed of the material required by the contract specifications and the Purchase Order.

24.    In connection with and prior to the furnishing of the fans at the project, the Plaintiff and its supplier and/or the manufacturer of the fans represented to the Defendant that the fans would be fabricated and installed in compliance with the requirements and standards as set forth in the contract specifications.

25.    The Plaintiff knew or should have known that the representations would be relied upon by the Defendant in connection with the Defendant's compliance with the Contract and that such representations were for the material benefit of the Defendant, the public and the NYDEP.

26.    At the time the Plaintiff submitted its requisition for payment, it knew that such representations were false and fraudulent and that they would be relied upon by the Defendant when the Defendant requisitioned the NYDEP for payment which included the Plaintiff's work.

27.    That prior to March 15, 1994, the NYDEP rejected the fans and refused to issue payment to the Defendant of the $705,000.00 performance bonus and withheld additional sums in connection with the supply and installation of the defective and/or non-conforming fans.

28.    From on or about March 15, 1994, and over the course of approximately the next ten (10) years, the Plaintiff failed and/or refused to take timely action as necessary to perform the corrective work required to remedy the defective and/or non-conforming fans.

29.    That thereafter, the Plaintiff finally took the appropriate action by repairing and/or replacing all of the defective and/or non-conforming fans and in or about September, 2004, the NYDEP accepted the remedial work performed by the Plaintiff and authorized the release of the Defendant's $705,000.00 performance bonus and whatever additional amounts were withheld in connection with the defective or non-conforming fans.

30.    That as a result of the substantial delays caused by the Plaintiff in failing and/or refusing to timely remedy the defective or non-confirming fans for a period of approximately fifteen (15) years, the Defendant has suffered damages for breach of contract and delays relating to the Defendant having been deprived of the $705,000.00 performance bonus which was to have been paid on or about June 30, 1992 following completion of the

project, in an amount to be determined by the Court but in no event will said amount be less than SEVEN HUNDRED FIFTY THOUSAND($750,000.00) DOLLARS.

## AS AND FOR A SECOND COUNTERCLAIM BY DEFENDANT, WDF, INC.

31.    The plaintiff repeats and reiterates each and every allegation as set forth in Paragraphs "1" through "30" with the same force and effect as though set forth fully herein.

32.    The Plaintiff misrepresentations to the Defendant that the fans complied with the contract specifications when in fact they knew or had knowledge that the fans did not comply with the contract specifications in that the fans were not fabricated with one hundred (100%) percent fiberglass material and that the fans were not capable of performing in accordance with the performance requirements as set forth in the contract specifications.

33.    The representations made by the Plaintiff were material to the Defendant's performance under its contract and were the direct cause for the rejection by the NYDEP of the work performed by the Plaintiff and the withholding of payment by the NYDEP of the Defendant's performance bonus.

34.    That as result of the foregoing false and material representations and fraud of the Plaintiff, the Defendant has been damaged in an amount to be determined by the Court as punitive damages.

WHEREFORE, the Defendants, WDF, Inc. and Seaboard Surety Company, demand judgment dismissing the Plaintiff's Complaint and further demand judgment in favor of WDF, Inc. on its First and Second Counterclaims in an amount to be determined by the Court, together with any other relief this Court deems just, proper and equitable in the circumstances.

Dated:      Jericho, New York
           July 11, 2008

                            Yours, etc.,

                            LAW OFFICES OF WILLIAM J. TURKISH, PLLC

                            By:
                            WILLIAM J. TURKISH, ESQ.
                            Attorney for Defendants
                            33 South Service Road
                            Jericho, NY 11753
                            Our File No. 6173.1
                            (516) 338-0585
                            FAX: (516) 338-0685

To:    KIRKPATRICK & LOCKHART PRESTON
       GATES ELLIS LLP
       Attorney for Plaintiff
       599 Lexington Avenue
       New York, NY 10022
       (212) 536-3900

       KIRKPATRICK & LOCKHART PRESTON
       GATES ELLIS, LLP
       535 Smithfield Street
       Pittsburgh, PA 15222

wjt/wdf/calgon/lit/answer 7.11.08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CALGON CARBON CORPORATION,

                    Plaintiff,              Case No. 08 CIV 4407 (CM)

        -against-
                                                    **ANSWER**

WDF, INC. and SEABOARD SURETY COMPANY,

                    Defendants

----------------------------------------X

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NASSAU       )

        **EILEEN J. FUCHS**, being duly sworn deposes and says:  I am not a party
to the action, am over 18 years of age and reside in Long Beach, New York.

        On July 11, 2008, I served a true copy of the annexed **ANSWER** in the
above matter, in the following manner: by mailing the same in a sealed
envelope, with postage prepaid thereon, in a post-office or official
depository of the U.S. Postal Service within the State of New York,
addressed to the last known address of the addressee as indicated below:

        KIRKPATRICK & LOCKHART PRESTON
        GATES ELLIS LLP
        599 Lexington Avenue
        New York, NY 10022

        KIRKPATRICK & LOCKHART PRESTON
        GATES ELLIS, LLP
        535 Smithfield Street
        Pittsburgh, PA 15222

                                        **EILEEN J. FUCHS**

Sworn to before me this
11th day of July, 2008

        Notary Public

            **WILLIAM TURKISH**
        **NOTARY PUBLIC, State of New York**
                **No. 02TU4801151**
            **Qualified in Nassau County**
        **Commission Expires Nov. 30, _____ 2009**